**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-23598-RAR**

**ANDRES PABLO MARTINEZ BRIZUELA**,

Petitioner,

v.

**WARDEN, KROME SERVICE PROCESSING CENTER**,

Respondent.
_______________________________________/

**ORDER DENYING PETITION**

**THIS CAUSE** comes before the Court upon *pro se* Petitioner Andres Pablo Martinez Brizuela's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") [ECF No. 1]. Respondent filed a Response [ECF No. 5], and Petitioner filed a Reply [ECF No. 6]. Having carefully reviewed the record and applicable law, the Court concludes that the Petition must be **DENIED**.

**BACKGROUND**

Petitioner is a native and citizen of Cuba who "arrived in the United States at . . . Miami, Florida, on . . . January 15, 1984," when he "was admitted as an immigrant." Notice to Appear, [ECF No. 5-2] at 1. In 1995, Petitioner was convicted in the Southern District of Florida of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and was sentenced to 121 months' imprisonment. *See* Pedersen Decl., [ECF No. 5-5] ¶ 3. In July 1998, a Florida court convicted Petitioner of lewd and lascivious assault on a child and sentenced him to three years' imprisonment. *See* Criminal Records, [ECF No. 5-3] at 5–8. Immigration authorities thereafter charged Petitioner with removability as an aggravated felon and as an alien with a controlled-substance conviction. *See* Notice to Appear at 1.

Petitioner was detained in July 2000 and transferred to immigration custody shortly thereafter. *See* Pedersen Decl. ¶ 6. On August 10, 2000, an Immigration Judge sustained the charges and ordered that Petitioner "be removed from the United States to C[uba] on the charge[s] contained in the Notice to Appear." Order of Immigration Judge, [ECF No. 5-4] at 5 (cleaned up). Petitioner did not appeal the order. *See* Pedersen Decl. ¶ 8. Immigration authorities released Petitioner from custody on November 17, 2000. *Id.* ¶ 9.

The Government did not, however, effectuate Petitioner's removal. On December 10, 2002, immigration officials placed Petitioner under an Order of Supervision ("OSUP") because "the Service ha[d] not effected [his] deportation or removal during the period prescribed by law," and therefore permitted him "to be at large under [certain] conditions." Order of Supervision [ECF No. 5-6] at 1 (cleaned up). Among those conditions, Petitioner was required to "appear in person at the time and place specified, upon each and every request of the Service, for identification and for deportation or removal" and to "assist the Immigration and Naturalization Service in obtaining any necessary travel documents." *Id.*

More than twenty-three years later, on January 5, 2026, ICE returned Petitioner to physical immigration custody. *See* Form I-213, [ECF No. 5-1] at 4. That same day, ICE served Petitioner with a Notice of Revocation of Release explaining that it had determined that "[i]t is appropriate to enforce [his] removal order" and that "[t]his decision has been made based on a thorough review of [his] case and the removal options available at this time." *Id.* at 5 (cleaned up). The Notice advised Petitioner that he would "remain in the custody of U.S. Immigration and Customs Enforcement" and would "promptly be afforded an informal interview" to respond to the reasons for revocation. *Id.* ICE conducted that interview that same day "in order to afford [Petitioner] an opportunity to respond to the reasons for revocation of his . . . order of supervision." Form I-213 at 7.

ICE then took steps to remove Petitioner to a third country. On January 12, 2026, ICE issued Petitioner a notice of third-country removal to Mexico. *See* Pedersen Decl. ¶ 11. And on February 10, 2026, ICE again served Petitioner with a Form I-294, Warning to Alien Ordered Removed or Deported, and a Notice of Revocation of Release, and conducted a second informal interview. *See id.* ¶ 12; Form I-294, [ECF No. 5-8]; Notice of Revocation of Release, [ECF No. 5-9]; Alien Informal Interview, [ECF No. 5-10].

Petitioner filed this Petition on May 21, 2026—136 days after ICE returned him to physical custody. *See generally* Pet. Liberally construed, the Petition raises two grounds for relief. In Ground One, Petitioner alleges that his continued post-removal-order detention violates due process because there is "no significant likelihood of removal" in the reasonably foreseeable future. *Id.* at 6. In Ground Two, Petitioner alleges that ICE unlawfully re-detained him because it "failed to properly revoke the existing Order of Supervision" and thereafter failed to provide adequate procedural protections concerning his continued detention. *Id.* at 6–7.

Respondent maintains that Petitioner's *Zadvydas* claim is premature because only 136 days of physical detention had elapsed when he filed the Petition. *See* Resp. at 4–8. Petitioner does not dispute that he returned to physical custody on January 5, 2026. Instead, he argues that the *Zadvydas* period began on October 25, 2025, when ICE allegedly placed him under an OSUP with an electronic ankle monitor, because he was then subject to "continuous supervision and control" by ICE. Reply at 1–2.

## **LEGAL STANDARD**

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C.

§ 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## ANALYSIS

### I. Ground One

As an initial matter, Petitioner's *Zadvydas* claim is premature. Section 1231(a)(6) permits the Government to detain certain noncitizens beyond the ninety-day removal period, but only for a period "reasonably necessary to bring about that alien's removal from the United States[.]" *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). For purposes of "uniform administration in the federal courts," the Supreme Court recognized six months as a "presumptively reasonable period of detention." *Id.* at 701. Thus, to state a *Zadvydas* claim, a petitioner must show both "post-removal order detention in excess of six months" and "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Critically, "[t]his six-month period . . . must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*." *Id.* (cleaned up); *see also Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1332–33 (11th Cir. 2021) ("If after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*."), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419–23 & n.2 (2023).

That threshold requirement is not satisfied here. Petitioner argues that the relevant period began on October 25, 2025, when ICE allegedly placed him on electronic monitoring as a condition of his OSUP. *See* Reply at 1–2. But *Zadvydas*'s six-month presumption concerns physical detention, not time spent released under supervision. *See Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (explaining that *Zadvydas* "consistently used the words 'detain' and 'custody' to refer

exclusively to physical confinement and restraint" (quoting *Zadvydas*, 533 U.S. at 690)); *Djadju v. Vega*, 32 F.4th 1102, 1104, 1107 (11th Cir. 2022) (explaining that a petitioner placed on an OSUP with electronic monitoring had been "released from detention" and "released from custody"); *Habash v. Warden, Krome Serv. Processing Ctr.*, No. 26-22397-RAR, 2026 WL 1217754, at *3–4 (S.D. Fla. May 5, 2026) (declining to aggregate periods of physical detention separated by release under an OSUP). Accordingly, Petitioner's October 2025 electronic monitoring did not begin the *Zadvydas* detention period.

ICE returned Petitioner to physical immigration custody on January 5, 2026. Pedersen Decl. ¶ 11. Petitioner filed this action on May 21, 2026—only 136 days later. *See* Pet. Accordingly, Petitioner had not been detained for six months when he filed the Petition, and his *Zadvydas* claim is premature. *See Akinwale*, 287 F.3d at 1052 ("This six-month period thus must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*.").

To be sure, the six-month presumptive period has now elapsed while this case has remained pending.[1] But even if the Court considered Petitioner's present circumstances, he still has not supplied "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Akinwale*, 287 F.3d at 1052. The record reflects that, one week after Petitioner's re-detention, ICE served him with a notice of third-country removal to Mexico. Pedersen Decl. ¶ 11. And Petitioner identifies no evidence that Mexico has refused to accept him or that some other impediment makes his removal there impracticable. The fact that travel documents have not yet issued does not, standing alone, establish that removal is not reasonably foreseeable. *See Habash*, 2026 WL 1217754, at *4 ("[A] delay in issuance of travel documents

---

[1] In a supplemental declaration, Petitioner states that he has remained continuously detained since January 5, 2026 and that, "to [his] knowledge no travel document has been issued and no country has confirmed it will accept [him]." Martinez Brizuela Decl., [ECF No. 8] ¶¶ 2, 10.

does not, without more, establish that a petitioner's removal will not occur in the reasonably foreseeable future[.]" (cleaned up) (quoting *Shaikh v. Meade*, No. 21-23752, 2022 WL 844420, at *3 (S.D. Fla. Mar. 22, 2022))); *see also Baez v. Warden, Krome Serv. Processing Ctr.*, No. 26-CV-23001-JB, 2026 WL 1842647, at *3 (S.D. Fla. June 26, 2026) (rejecting the second *Zadvydas* prong where ICE was "in the process of effectuating Petitioner's removal to Mexico" and had served a notice of removal to Mexico).

Accordingly, Ground One was premature when filed and, in any event, the present record does not establish that Petitioner's removal is unlikely in the reasonably foreseeable future. Ground One is therefore **DENIED**.

**II. Ground Two**

Petitioner's remaining claim fares no better. Liberally construed, Petitioner alleges that ICE unlawfully re-detained him because it failed to follow the procedures governing revocation of his OSUP and continued custody. *See* Pet. at 6–7.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court has given § 1252(g) a "narrow reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) ("*AAADC*"); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). Rather, as "the Supreme Court has explained, § 1252(g) lists just three 'discrete actions': actions to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *AAADC*, 525 U.S. at 482). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise

from one of the covered actions are excluded from [a court's] review (at least by this provision)." *Id.* (quoting *AAADC*, 525 U.S. at 482) (emphasis added).

The Supreme Court has likewise interpreted § 1252(g)'s "arise from" language narrowly, cautioning that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions"; instead, the statute "refer[s] to just those three specific actions themselves." *Jennings*, 583 U.S. at 294. In other words, to determine whether a claim "arise[s] from" one of the covered actions, "courts must focus on the action being challenged," *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020), namely, whether one of the three actions listed in § 1252(g) forms the "basis of the claim," *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013), *suggestion for reh'g en banc denied*, 737 F.3d 694 (11th Cir. 2013), *cert. denied*, 573 U.S. 931 (2014).

Consequently, an alien who seeks a stay of a removal order or challenges the Attorney General's deportation authority "runs headlong into § 1252(g)" regardless of how the alien frames the claim because, at bottom, the action being challenged is the decision to "execute" a removal order. *Camarena*, 988 F.3d at 1273. The Eleventh Circuit has nevertheless distinguished between situations where an alien's claims are founded directly on a decision or action to commence proceedings, adjudicate cases, or execute removal orders, from those where an alien challenges the "underlying legal bases" of those decisions or actions. *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (citations omitted); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (finding that § 1252(g) does not bar "judicial consideration of collateral challenges to the legality of a petitioner's detention"); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) (finding that § 1252(g) does not bar consideration of "a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney

General later will exercise discretionary authority"); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (finding that § 1252(g) did not bar review of a claim related to detention where the petitioner "did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter'").

Applying these principles, Ground Two has two components. First, to the extent Petitioner asks the Court to review ICE's discretionary determination that his OSUP should be revoked so that his final removal order could be executed, his claim "runs headlong into § 1252(g)." *Camarena*, 988 F.3d at 1273. The action Petitioner challenges is, at bottom, ICE's decision to "execute" his removal order—one of the three discrete actions Congress expressly removed from judicial review. 8 U.S.C. § 1252(g); *see Camarena*, 988 F.3d at 1272–73. The Court therefore lacks jurisdiction to second-guess ICE's discretionary decision to revoke Petitioner's release for purposes of effectuating his removal.

Petitioner's procedural challenge is different. He also contends that, even if ICE possessed the authority to revoke his OSUP, the agency failed to follow the binding procedures governing that revocation. That argument does not ask the Court to review whether ICE *should have* executed his removal order; it asks whether ICE complied with the legal requirements governing *how* it returned him to custody. The Court may consider that narrower question. *See Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) ("Even when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations." (citation omitted)); *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1251 (S.D. Fla. 2025).

That narrower challenge fails on the merits. Under 8 C.F.R. § 241.4(l), an individual whose release is revoked must be "notified of the reasons for revocation" and "afforded an initial informal interview promptly to afford the alien an opportunity to respond to the reasons for revocation stated

in the notification." *Grigorian*, 824 F. Supp. 3d at 1251–52. The record establishes that ICE afforded Petitioner those procedures. On January 5, 2026, ICE served Petitioner with a Notice of Revocation of Release explaining that "[i]t is appropriate to enforce [his] removal order" and advising him that he would "promptly be afforded an informal interview" at which he could "respond to the reasons for the revocation." Notice of Revocation of Release at 5. ICE conducted that interview the same day "in order to afford [Petitioner] an opportunity to respond to the reasons for revocation of his . . . order of supervision." Form I-213 at 7. ICE again served Petitioner with a Notice of Revocation and conducted another informal interview on February 10, 2026. *See* Notice of Revocation of Release; Alien Informal Interview.

Thus, documentation in the record contradicts Petitioner's allegations that ICE re-detained him "without proper revocation," failed to afford him an opportunity to respond, or supplied only a post-hoc justification for his detention. Pet. at 6–7. Ground Two is therefore **DENIED**.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, [ECF No. 1], is **DENIED**.
2. All pending motions are **DENIED as moot**.
3. All deadlines are **TERMINATED**.
4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 11th day of September, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc: Andres Pablo Martinez Brizuela, *pro se*
counsel of record